UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SIOBHAN HALDEMAN, Plaintiff, v. MASS GENERAL BRIGHAM INC. and THE MASSACHUSETTS GENERAL HOSPITAL LONG TERM DISABILITY WRAP PLAN, Defendants. | * * * * * * * * * * * * * * | Civil Action No. 25-cv-10331-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Siobhan Haldeman, a participant in the Massachusetts General Hospital Long Term Disability Wrap Plan (the "Plan"), brings this action against the Plan and Mass General Brigham, Inc. ("MGB"; together with the Plan, "Defendants"), which administers the Plan, seeking a discretionary penalty pursuant to 29 U.S.C. § 1132(c)(1) for Defendants' alleged failure to provide her with the documents governing the Plan ("the Plan Documents"), as well as attorney's fees and costs. See [ECF No. 1 ¶¶ 1–3]. Now before the Court are the parties' cross-motions for summary judgment. [ECF No. 16]; [ECF No. 20]. For the following reasons, Haldeman's motion, [ECF No. 16], is **GRANTED** as to MGB and **DENIED** as to the Plan, and Defendants' cross-motion, [ECF No. 20], is **GRANTED** as to the Plan and otherwise **DENIED.**

# I. BACKGROUND

## A. Factual Background

The parties agree on the following facts. See generally [ECF No. 22].[1] On August 19, 2024, a claim administrator denied a claim submitted by Haldeman for long-term disability benefits. [Id. ¶ 2]. On September 18, 2024, in connection with a planned appeal of the denial, Haldeman's counsel requested the Plan Documents and Haldeman's personnel file from MGB. [Id. ¶ 4]. The next day, an MGB employee, Rhonda Killoren ("Killoren") said that she would forward the request for the personnel file to the appropriate office, attached a summary description of the Plan, and noted, "If I have missed anything, please let me know." [Id. ¶ 5]; see [ECF No. 19-2 at 1]. On October 22, 2024, Haldeman's counsel wrote to MGB to follow up on the personnel file request and added, "please provide our firm with the plan documents for any employee welfare benefits Ms. Haldeman is entitled to receive as a result of her receipt of disability benefits," noting that 29 U.S.C. § 1132(c) requires disclosure of such documents within thirty days of their request. [ECF No. 22 ¶ 6]; [ECF No. 19-4 at 3]. MGB did not respond. [ECF No. 22 ¶ 7]. On October 29, 2024, Haldeman's counsel again wrote to Killoren, renewing her request for the Plan Documents and requesting a series of additional documents, including any subsequent amendments to the Plan and a variety of communications concerning it. [Id. ¶ 8]; [ECF No. 19-5 at 1–2]. Killoren responded that she was "work[ing] on gathering th[e] information" and would "send it over . . . shortly." [ECF No. 22 ¶ 9]; [ECF No. 19-6 at 2].

[1] In addition to responding to Haldeman's statement of material facts, Defendants asserted facts in support of their own summary judgment motion, see [ECF No. 22 ¶¶ 43–53], to which Haldeman did not file a response as required by Local Rule 56.1. Accordingly, those facts "will be deemed for purposes of [Defendants' cross-motion for summary judgment] to be admitted by [Haldeman]." L.R. 56.1.

Haldeman's counsel contacted MGB again on December 2, 2024, seeking the Plan Documents, [ECF No. 22 ¶ 10]; [ECF No. 19-7], and on December 9, 2024, seeking Haldeman's personnel file and the Plan Documents that she had previously requested, [ECF No. 22 ¶12]; [ECF No. 19-8]; [ECF No. 19-9]. MGB did not respond to either request. [ECF No. 22 ¶¶ 11, 13]. On December 18, 2024, Haldeman's counsel followed up again by email to Killoren and by fax to both Killoren and MGB's human resources department. [Id. ¶¶ 14–15]; [ECF No. 19-10 at 2]; [ECF No. 19-11]; [ECF No. 19-12]. Killoren wrote back the same day, apologizing and saying that she would promptly send over the requested material after confirming that she had the most up-to-date information. [ECF No. 22 ¶ 16]; [ECF No. 19-10 at 1]. She did not send over any material. [ECF No. 22 ¶ 17]. Counsel for Haldeman emailed Killoren again on January 11, 2025, [id. ¶ 18]; [ECF No. 19-13 at 1], and sent another written request to MGB, noting that the requested documents were necessary to appeal the claim denial, [ECF No. 22 ¶ 19]; [ECF No. 19-14 at 1].

On February 9, 2025, Haldeman filed this lawsuit, seeking the Plan Documents and a statutory penalty for Defendants' delay in providing them. [ECF No. 1]. Thereafter, Haldeman's counsel continued to contact Defendants in relation to this lawsuit and her request for the Plan Documents. See [ECF No. 22 ¶¶ 22–23, 25–31, 33–37]. On May 6, 2025, counsel for MGB provided the Plan Documents. [Id. ¶ 38]. MGB contends that it had already provided Haldeman's counsel with the Plan Documents in connection with separate matters in which Haldeman's counsel represented other Plan claimants, see [ECF No. 23 ("Rubin Aff.") ¶¶ 9–11], but it identifies May 6, 2025, as the first time it advised Haldeman's counsel that she already had the relevant Documents in her possession, see [ECF No. 22 ¶ 41]. MGB also does not dispute that it was the first time that it provided Haldeman's counsel with the documents in connection

with Haldeman's disability benefits claim, as opposed to in connection with another client's claim. See [Id. ¶ 39]; [Rubin Aff. ¶¶ 8–11].

### B. Procedural History

Haldeman initiated this action on February 9, 2025, [ECF No. 1], and Defendants answered on May 15, 2025, [ECF No. 11]. On September 2, 2025, Haldeman moved for summary judgment, [ECF No. 16], and on October 2, 2025, Defendants filed a cross-motion for summary judgment, [ECF No. 20], and an opposition to Haldeman's motion, [ECF No. 21]. On October 14, 2025, Haldeman filed an opposition to Defendants' cross-motion. [ECF No. 24].

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)), and it is genuinely disputed if "the evidence of record permits a rational factfinder to resolve it in favor of either party," id. at 4–5 (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "[T]he moving party must direct [the Court] to specific evidence in the record that would be admissible at trial," Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015), and show that the evidence either "'negates an essential element of the non-moving party's claim' or . . . 'demonstrate[s] that the non-moving party will be unable to carry its burden of persuasion at trial,'" id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Once the moving party has identified such evidence, the burden shifts to the party opposing summary judgment to "demonstrate that a trier of fact could reasonably resolve [each issue on which she

would bear the burden of proof at trial] in her favor." Borges, 605 F.3d at 5 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

The Court reviews "the entire record in the light most hospitable to the party opposing summary judgment," Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), and draws all inferences "in the light most favorable to the party opposing the motion," Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)), but it will not credit "conclusory allegations, improbable inferences, [or] unsupported speculation," Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Munoz, 896 F.2d at 8).

## III. DISCUSSION

Pursuant to 29 U.S.C. § 1132(c)(1), Plaintiff seeks an award of $22,000 in penalties, as well as attorney's fees and costs, for the failure to timely disclose the requested Plan Documents. [ECF No. 16 at 2]. Defendants contend that the Court should award no penalty, fees, or costs, because their delay in providing the Plan Documents was not motivated by bad faith and Plaintiff was not prejudiced, and they separately argue that the Plan cannot be liable because MGB is the only proper defendant for a claim asserting failure to provide required documents. [ECF No. 21 at 1].

### A. Whether the Plan or MGB is the Proper Defendant

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 26 and 29 U.S.C.), a plan's administrator, which "is a defined term" under the statute, is distinct from the plan itself. Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 59 (1st Cir. 2014). Only the

administrator may be liable for penalties under § 1132(c)(1). See id. at 58–59. The parties agree that MGB is the administrator of the Plan. [ECF No. 22 ¶ 1]. Accordingly, only MGB—and not the Plan itself—is a proper Defendant in this case, and the Plan is entitled to summary judgment.

**B. MGB's Compliance with ERISA's Disclosure Requirements**

ERISA was enacted "to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). To that end, it provides "a comprehensive civil enforcement scheme that . . . balanc[es] . . . the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." Id. (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)). It also provides for penalties where plan administrators fail to comply with certain disclosure requirements. See 29 U.S.C. § 1132(c). In particular, "when an administrator 'fails or refuses to comply' with a proper request for plan documents inside 30 days, the court in its discretion may impose a monetary penalty 'of up to $100 a day,'" which was later increased by regulation to $110 per day. McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 382 (1st Cir. 2015) (quoting 29 U.S.C. § 1132(c)(1)(B)). The Court may also, "in its discretion[,] order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

The threshold issue is whether MGB failed to comply with a request for plan documents within thirty days. It is undisputed that May 6, 2025, was the first time that Haldeman's counsel received the Plan Documents in response to her requests on Haldeman's behalf. See [ECF No. 22 ¶¶ 39, 41]; [Rubin Aff. ¶¶ 8–11]. That was 230 days after Haldeman first requested the documents, see [ECF No. 19-1 at 1]; [ECF No. 19-2 at 2], and 196 days after Haldeman submitted the first of many follow-ups, see [ECF No. 19-4 at 3]. MGB now argues that Haldeman's counsel already possessed the Plan Documents because, "[i]n connection with another matter . . . , MGB's attorney sent [Haldeman's] attorney the Plan [D]ocuments" and

Haldeman's counsel "knew that these individuals were in the same Plan," [ECF No. 21 at 6], but it did not advise Haldeman's counsel of that fact until May 6, 2025, at the same time as it provided her with the Plan Documents. [ECF No. 22 ¶¶ 38–39, 41]; [Rubin Aff. ¶¶ 8–11]. Furthermore, even accepting the doubtful proposition that MGB's statutory obligation to answer Haldeman's request could be satisfied by Haldeman's counsel having previously received the Plan documents in connection with another client, MGB's conduct here was at odds with such a justification. In the months following the requests on Haldeman's behalf, MGB never told Haldeman's counsel that she already possessed the Plan Documents; to the contrary, it repeatedly promised to promptly deliver the Plan Documents, then failed to do so. Further, certain of MGB's comments along the way—such as Killoran stating the need to "confirm . . . the most up-to-date version," [ECF No. 19-10 at 1]—invited the inference that Haldeman's counsel would not be justified in relying on earlier-produced documents concerning the same or similar plans. All told, Haldeman has succeeded in establishing that MGB failed to timely provide the Plan Documents in response to a proper request in violation of 29 U.S.C. § 1132(c)(1), and the excuses offered by MGB are unavailing.

### C. Appropriateness of a Penalty

Courts "consider the totality of the circumstances" in deciding whether to award a penalty for a violation of 29 U.S.C. § 1132(c)(1). McDonough, 783 F.3d at 383 (first citing Kwan v. Andalex Grp. LLC, 737 F.3d 834, 848 (2d Cir. 2013); and then citing Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3d Cir. 2002)). One of the purposes of the penalty provision is "deterren[ce]," id. at 382, and "prejudice and bad faith are not prerequisites for imposition of penalties," Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588 (1st Cir. 1993). That said, the Court may "properly consider[]" prejudice and bad faith in deciding whether a penalty is warranted, and in practice, courts often do. Id.; accord Kerkhof v.

MCI WorldCom, Inc., 282 F.3d 44, 55–56 (1st Cir. 2002). Where a penalty is warranted, the maximum daily rate prescribed by statute and regulation provides a "ceiling," but the Court need not rely on that rate "at all," as the total amount of a penalty is left to its discretion. McDonough, 783 F.3d at 383.

Haldeman argues that her inability to "confirm that [the claim administrator] was reviewing her claim under the correct . . . standard" or to discover "any Plan provisions that would aid [her]" prejudiced her appeal. [ECF No. 17 at 9]. MGB asserts that she could not have been prejudiced because most or all relevant information was contained either in a plan summary provided in its first response to Haldeman or in the benefit denial notice, which "quoted extensively from the relevant provisions of the Plan documents," and notes that Haldeman has not "identif[ied] any specific prejudice" resulting from the delayed disclosure. [ECF No. 21 at 8]. On balance, the Court finds that Haldeman has shown enough prejudice to be entitled to a penalty award. The entire "elaborate scheme" provided by ERISA for "beneficiaries to learn their rights and obligations . . . is built around reliance on the face of written plan documents." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995). Haldeman was deprived of those essential documents while planning her appeal. Such a lack of key information is inherently prejudicial, regardless of whether it produced a negative outcome on appeal.

Haldeman does not accuse MGB of bad faith, but she notes that it displayed significant "inattentiveness." [ECF No. 17 at 7 (quoting McDonough, 783 F.3d at 383)]. In response, MGB does not explain why it took so long to provide the Plan Documents, or why it repeatedly promised Haldeman's counsel that it was on the verge of sending them to her. Rather, it simply insinuates that the delay resulted from matters outside its control. [ECF No. 21 at 6]. Though the Court does not find bad faith on the record before it, it does find that MGB's continued

pattern of promising a prompt response, then failing to provide the Plan Documents or alert Haldeman's counsel to the fact that she already possessed them, reflects a disregard of its statutory obligations. See Lowe v. McGraw-Hill Cos., 361 F.3d 335, 338 (7th Cir. 2004) (calling a 701-day delay "egregious" and noting that the "offender . . . cannot claim to lack the resources necessary for processing document requests expeditiously").

All told, given the prejudice suffered by Haldeman and MGB's lack of concern for its obligations as a plan administrator, the Court concludes that a modest penalty award is warranted. In McDonough, the First Circuit affirmed the district court's award of a $5,000 penalty for a 1,157-day delay caused by inattentiveness rather than by bad faith, or roughly $4 per day. 783 F.3d at 382. Other courts in this circuit have awarded higher amounts under comparable circumstances. See Guitard v. A.R. Couture Constr. Corp., 784 F. Supp. 3d 491, 498 (D.N.H. 2025) ($100 per day); Villanueva Carrión v. Crown Plaza P.R., Inc., No. 05-cv-01214, 2006 WL 3337493, at *2 (D.P.R. Nov. 14, 2006) ($15 per day). The totality of the circumstances of this case persuades the Court that taking a middle route is fitting here. MGB must pay a penalty of $5,000 to Haldeman.

### D. Attorney's Fees and Costs

Under ERISA, the Court may also award fees and costs if the party seeking costs has shown "some degree of success on the merits," Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)), beyond a "'trivial success' or 'a purely procedural victory,'" Gross v. Sun Life Assurance Co. of Can., 763 F.3d 73, 76 (1st Cir. 2014) (quoting Hardt, 560 U.S. at 255). In deciding whether an eligible party is entitled to a fee award in a particular case, courts consider:

> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under

> similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

Id. at 83 (quoting Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996)). "[N]ot every factor in the list must be considered in every case . . . ." Id. (quoting Janeiro v. Urological Surgery Pro. Ass'n, 457 F.3d 130, 143 (1st Cir. 2006)).

The Court concludes that Haldeman's successful claim for a statutory penalty is sufficient to entitle her to attorney's fees, particularly in light of the deterrent purpose of the penalty provision and the fact that Haldeman's successful attempt to secure access to the materials was necessary for her to fully assert her rights in the Plan's appeal process. Cf. Huss v. IBM Med. & Dental Plan, 418 F. App'x 498, 512 (7th Cir. 2011) (citing "imposition of a statutory penalty" as one of several successes that made plaintiff eligible for attorney's fees). Further, the Gross factors favor an award on the facts of this case: (1) although MGB did not act in bad faith, it apparently made little or no effort to comply with its statutory obligations, which Haldeman's counsel repeatedly highlighted in her emails to MGB; (2) there has been no suggestion that MGB would be unable to pay an award; (3) an award of attorney's fees here could deter MGB and similarly situated administrators from treating future requests for plan documents with the same lack of concern; (4) this suit facilitated, after several months, the provision of the Plan Documents to Haldeman, which she needed to effectively litigate her appeal, and (5) MGB has adduced little in the way of legal argument or facts that suggest its position in this dispute ever had merit; it relies largely on the apparently retrospective justification that Haldeman's counsel had the at-issue documents all along.

## IV. CONCLUSION

For the foregoing reasons, Haldeman's motion for summary judgment, [ECF No. 16], is **GRANTED** as to MGB and **DENIED** as to the Plan, and Defendants' cross-motion for

summary judgment, [ECF No. 20], is **GRANTED** as to the Plan and otherwise **DENIED**. The Clerk is **ORDERED** to enter judgment for Haldeman against MGB for $5,000 plus reasonable attorney's fees and costs,[2] and judgment of no liability for the Plan against Haldeman.

**SO ORDERED.**

September 14, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

[2] Haldeman is instructed to submit a motion for attorney's fees within 14 days of this order, including a statement of the amount sought and documentation supporting that amount.